UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DAVID LAKE,

       Plaintiff,

 -v-              3:14-CV-1394

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

       Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LACHMAN, GORTON LAW FIRM<br>Attorneys for Plaintiff<br>P.O. Box 89<br>1500 East Main Street<br>Endicott, NY 13761 | PETER A. GORTON, ESQ. |
| OFFICE OF REGIONAL GENERAL COUNSEL<br> SOCIAL SECURITY ADMINISTRATION<br> REGION II<br>Attorneys for Defendant<br>26 Federal Plaza, Room 3904<br>New York, NY 10278 | VERNON NORWOOD, ESQ.<br>Special Ass't United States Attorney |

DAVID N. HURD
United States District Judge

## **MEMORANDUM–DECISION and ORDER**

**I. INTRODUCTION**

  Plaintiff David Lake ("Lake" or "plaintiff") brings this action, pursuant to 42

U.S.C. §§ 405(g) and 1383(c)(3), seeking review of defendant Commissioner of Social

Security's ("Commissioner" or "defendant") final decision denying his application for

Supplemental Security Income ("SSI"). The parties have filed their briefs as well as the

Administrative Record on Appeal and the motions will be considered on the basis of these submissions without oral argument.[1]

## II. BACKGROUND

In April 2011, Lake protectively filed an application for SSI alleging that his bipolar, depressive, anxiety, panic, and post-traumatic stress disorders, as well as his irritable bowel syndrome, hepatitis C, and back condition, had rendered him disabled beginning on July 15, 1987. R. at 169-74, 198.[2]

The Commissioner initially denied Lake's claim on July 20, 2011. R. at 75-78. At plaintiff's request, a hearing was held before Administrative Law Judge ("ALJ") John Ramos on April 24, 2013. Id. at 42-66. Plaintiff, represented by an attorney, appeared and testified. Id.

On May 28, 2013, the ALJ issued a written decision denying Lake's application for benefits, which became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. R. at 1-3, 13-23.

On November 18, 2014, Lake filed this action seeking judicial review of the Commissioner's denial of benefits. Because the parties are familiar with the underlying facts, they are discussed only to the extent necessary to address plaintiff's appeal.

## III. DISCUSSION

### A. Standard of Review

A court's review of the Commissioner's final decision is limited to determining whether

---

[1] Pursuant to General Order No. 18 of the Northern District of New York, consideration of this matter will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

[2] Citations to "R." refer to the Administrative Record.

the decision is supported by substantial evidence and the correct legal standards were applied. Poupore v. Astrue, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)). If the Commissioner's disability determination is supported by substantial evidence, that determination is conclusive. See id. Indeed, where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's decision must be upheld—even if the court's independent review of the evidence may differ from the Commissioner's. Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982); Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).

However, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards," the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)).

### B. Disability Determination—The Five-Step Evaluation Process

The Act defines "disability" as the "inability to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In addition, the Act requires that a claimant's:

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

Id. § 423(d)(2)(A).

The ALJ must follow a five-step evaluation process in deciding whether an individual is disabled. See 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ must determine whether the claimant has engaged in substantial gainful activity. A claimant engaged in substantial gainful activity is not disabled, and is therefore not entitled to benefits. Id. §§ 404.1520(b), 416.920(b).

If the claimant has not engaged in substantial gainful activity, then step two requires the ALJ to determine whether the claimant has a severe impairment or combination of impairments which significantly restricts his physical or mental ability to perform basic work activities. Id. §§ 404.1520(c), 416.920(c).

If the claimant is found to suffer from a severe impairment or combination of impairments, then step three requires the ALJ to determine whether, based solely on medical evidence, the impairment or combination of impairments meets or equals an impairment listed in Appendix 1 of the regulations (the "Listings"). Id. §§ 404.1520(d), 416.920(d); see also id. Pt. 404, Subpt. P, App. 1. If the claimant's impairment or combination of impairments

- 4 -

meets one or more of the Listings, then the claimant is "presumptively disabled." Martone, 70 F. Supp. 2d at 149 (citing Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984)).

If the claimant is not presumptively disabled, step four requires the ALJ to assess whether—despite the claimant's severe impairment—he has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The burden of proof with regard to these first four steps is on the claimant. Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) (citing Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)).

If it is determined that the claimant cannot perform his past relevant work, the burden shifts to the Commissioner for step five. Perez, 77 F.3d at 46. This step requires the ALJ to examine whether the claimant can do any type of work. 20 C.F.R. §§ 404.1520(g), 416.920(g). The regulations provide that factors such as a claimant's age, physical ability, education, and previous work experience should be evaluated to determine whether a claimant retains the RFC to perform work in any of five categories of jobs: very heavy, heavy, medium, light, and sedentary. Perez, 77 F.3d at 46 (citing 20 C.F.R. § 404, Subpt. P, App. 2). "[T]he Commissioner need only show that there is work in the national economy that the claimant can do; [she] need not provide additional evidence of the claimant's residual functional capacity." Poupore, 566 F.3d at 306 (citing 20 C.F.R. § 404.1560(c)(2)).

**C. ALJ's Decision**

The ALJ first found Lake had not engaged in substantial gainful activity since April 19, 2011, the application date. R. at 15. The ALJ next found plaintiff's hepatitis C and depressive disorder to be severe impairments. Id. Next, the ALJ concluded that plaintiff's combination of severe impairments did not meet or medically equal any of the Listings. Id. at

16.

>The ALJ then determined Lake retained the RFC to:
>
>>lift and carry up to 10 pounds occasionally and less than 10 pounds frequently; sit for six hours in an eight-hour workday; and stand/walk for two hours in an eight-hour workday. He retains the ability to understand and follow simple instructions and directions; perform simple tasks; regularly attend to a routine and maintain a schedule; relate to and interact appropriately with others to the extent necessary to carry out simple tasks; and handle reasonable levels of simple, repetitive work-related stress in that he can make decisions directly related to the performance of simple work and handle usual work place changes and interactions associated with simple work.

R. at 18.

Based on these findings and Lake's age, education, and work experience, the ALJ determined that jobs existed in significant numbers in the national economy that plaintiff could perform. R. at 21. Accordingly, the ALJ concluded plaintiff was not disabled within the meaning of the Act. Id. at 23.

### D. **Plaintiff's Appeal**

Lake argues the ALJ: (1) erred at step two by concluding plaintiff's irritable bowel syndrome was not a "severe" impairment; (2) incorrectly evaluated the medical opinions in the record; (3) improperly assessed his credibility; and (4) failed to consult with a Vocational Expert.

### 1. **Step Two**

At step two, the ALJ must determine whether a claimant has one or more severe impairments that significantly limit his physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c); 416.920(c). Lake argues the ALJ should have found his irritable bowel syndrome ("IBS") to be a "severe" impairment within the meaning of this

definition. Pl.'s Mem., ECF No. 11, 10.[3]  According to plaintiff, the ALJ failed "to appreciate the impact IBS's symptoms can have on the ability to do work - namely, the ability to maintain acceptable levels of work pace and attendance due to the frequency of the need to use the bathroom and the length of bathroom breaks."  Id. at 11.

IBS is a chronic, sometimes lifelong condition that "leads to abdominal pain and cramping, changes in bowel movements, and other symptoms[, which can] range from mild to severe."  Kiely v. Astrue, 2011 WL 5078772, at *3 n. 11 (D. Conn. Sept. 2, 2011).  "For some people, symptoms are disabling and reduce the ability to work, travel, and attend social events."  Id. (citation omitted).  However, those "[s]ymptoms can often be improved or relieved through treatment."  Id. at *3 n. 11.

Here, Lake points to treatment records that confirm he was diagnosed with IBS following a September 2009 colonoscopy.  R. at 260; see also Pl.'s Mem. at 10 (citing transcript for treatment records from 2009 to 2013).  But this diagnosis, standing alone, does not establish severity within the meaning of the Regulations, since the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is insufficient to render a condition "severe" as that term is defined in the Act.  Zenzel v. Astrue, 993 F. Supp. 2d 146, 152 (N.D.N.Y. 2012) (Kahn, J.) (citation omitted) (adopting Report & Recommendation of Bianchini, M.J.).  Nor can severity be established by plaintiff's generalized assertion about the range of possible symptomatology that *may* be associated with an IBS diagnosis in certain patients, such as the urgent need to take frequent or unscheduled bathroom breaks.

---

[3] Pagination corresponds with that assigned by CM/ECF.

Rather, even though step two is only intended to "screen out de minimis claims," Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995), the burden at this step remains on Lake to identify how the particular symptomatology arising from *his* IBS condition "significantly limits" his physical or mental ability to complete basic work activities.[4] Zenzel, 993 F. Supp. 2d at 152.

On this issue, the Commissioner makes a salient observation—although Lake identified the existence of his IBS diagnosis at his hearing before the ALJ, the remainder of the hearing transcript contains no indication from plaintiff that his IBS was causing any ongoing problems, such as requiring that he take frequent or unscheduled bathroom breaks, that might be contributing to his alleged inability to work. Cf. Skinner v. Astrue, 478 F.3d 836, 842 (7th Cir. 2007) ("[A] claimant represented by counsel is presumed to have made his best case before the ALJ.").

With that in mind, further discussion of Lake's medical record is warranted. First, and as the ALJ correctly noted in his written decision, certain medical evidence in the record established that plaintiff had complained of bowel accidents in 2009 and 2010, which caused his doctor to order a gastroenterological workup that ultimately resulted in the IBS diagnosis at issue here. R. at 297 (August 2009 treatment record noting onset of "constipation" and "abdominal pain"); R. at 270 (September 2009 treatment record noting plaintiff suffering from "accidents" and "not being able to make it to the rest room in time"); R. at 267 (November 2009 treatment record noting fecal incontinence "stressing" claimant out, but indicating use

---

[4] Examples of these basic work activities include: "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling . . . seeing, hearing, and speaking . . . [u]nderstanding, carrying out, and remembering simple instructions . . . [u]se of judgment . . . [r]esponding appropriately to supervision, co-workers and usual work situations." Zenzel, 993 F. Supp. 2d at 152 (citations omitted).

of Metamucil has improved urgency and accidents); R. at 264 (January 2010 treatment record noting suspected IBS and "fear of accidents" and scheduling colonoscopy); R. at 260 (April 2010 treatment record noting "normal" colonoscopy results, reports of "occasional" symptoms of stool incontinence, and "significant improvement" with treatment); R. at 370-71 (February 2010 emergency room record noting complaint of "abdominal pain" and "fecal incontinence after eating," but severity "described as mild"); R. at 366-67 (February 2010 emergency room record noting chief complaint of "abdominal pain" but leaving hospital without treatment); R. at 446 (December 2010 treatment record noting IBS diagnosis and active prescriptions for seroquel and loperamide).

But as the ALJ also noted, although Lake's more recent treatment records confirm the ongoing existence of the IBS diagnosis, they do not document the same kind of complaints or functional issues, such as bowel accidents, about which plaintiff initially complained in 2009 and 2010. See, e.g., R. at 451-54 (January 2012 treatment record noting IBS diagnosis and active prescription for loperamide); R. at 465 (March 2013 treatment record noting IBS diagnosis and active prescription for loperamide); R. at 471 (March 2013 treatment record noting "irritable colon").

Lake argues the ALJ made a significant misstep here by making the incorrect factual finding that plaintiff was no longer taking any IBS medication. Pl.'s Mem. at 10. And to be sure, that statement warrants scrutiny in this case, since certain treatment records in 2012 and 2013 appear to indicate plaintiff continued to take loperamide, an anti-diarrheal, as needed for his IBS. R. at 451-54, 465. But even accepting that this statement was in error, the issue the ALJ was obligated to decide at step two was whether the actual symptomatology arising from the impairment in question posed any more than a minimal

limitation on plaintiff's ability to perform basic work activities.

Where, as here, the evidence indicates a condition is well-controlled by medication and does not cause the claimant any functional issues, that condition is ordinarily not "severe" within the meaning of the Regulations. See, e.g., Weed Covey v. Colvin, 96 F. Supp. 3d 14, 28 (W.D.N.Y. 2015) (approving ALJ's conclusion that claimant's back pain was non-severe where it was "well controlled with medication" and there were "no side effects from the medication"); Evans v. Comm'r of Soc. Sec., 110 F. Supp. 3d 518, 532 (S.D.N.Y. 2015) (concluding same with respect to hypertension); Ortiz v. Astrue, 875 F. Supp. 2d 251, 260 (S.D.N.Y. 2012) (concluding same where high cholesterol and gastrointestinal problems were "sufficiently controlled by medication, posing at most a minimal limitation on [claimant's] ability to perform basic work or social activities").

Each of the cases cited by Lake on this issue are thus distinguishable, since in each of those cases there existed unresolved allegations and unreconciled evidence regarding the claimant's ongoing symptomatology that necessitated explicit analysis on remand. Saunders v. Colvin, 93 F. Supp. 3d 179, 183 (W.D.N.Y. 2015) (concluding ALJ failed to consider effect of IBS on claimant's ability to perform work where testimony included claim of "frequent, and typically urgent, need to use a restroom"); Compston v. Astrue, 2011 WL 4360106, at *11 (S.D. Ohio July 18, 2011) (Report & Recommendation) (remanding where ALJ "made no specific findings" regarding bathroom breaks even though claimant's physician opined he "would need at least five restroom breaks per day"); Spaulding v. Astrue, 702 F. Supp. 2d 983, 995 (N.D. Ill. 2010) (remanding for ALJ to "articulate his findings" with respect to claimant's testimony that "she used the bathroom from three to twelve times a day, sometimes for more then [*sic*] thirty minutes at a time" and on the issue of certain medical

reports that reflected a particularized need for bathroom breaks); Green v. Astrue, 2010 WL 2901765, at *5 (E.D. Tenn. July 2, 2010) (Report & Recommendation) (faulting ALJ for finding urinary incontinence to be a severe impairment requiring "frequent restroom breaks" but then providing "no explanation of how often or for how long [claimant] needed to visit the restroom over the course of a workday"); Brueggen v. Barnhart, 2006 WL 5999614, at *5 (W.D. Wis. Dec. 15, 2006) (Report & Recommendation) (recommending remand where ALJ failed to address plaintiff's significant testimony regarding need for frequent, unscheduled bathroom breaks).

Those circumstances are not present here. And contrary to Lake's further assertion, there is no indication that the ALJ's errant statement regarding plaintiff's IBS medication resulted in any identifiable prejudice during the latter steps of the sequential evaluation. "Because Step Two merely serves as a filter to screen out *de minimis* disability claims, a finding of any severe impairment, whether attributable to a single condition or a combination of conditions, is enough to satisfy its requirements." Weed Covey, 96 F. Supp. 3d at 28 (citation omitted).

Here, the ALJ also went on to specifically note Lake's IBS diagnosis at later stages of the evaluation, in particular identifying a lack of disabling symptoms in formulating his RFC assessment. R. at 19 (noting claimant reported improvement in symptoms with treatment and reported "little-to-no bowel accidents"); see also Reices-Colon v. Astrue, 523 F. App'x 796, 798 (2d Cir. 2013) (summary order) (finding any step two error harmless where alleged condition was considered during subsequent steps of sequential evaluation).

However, because this matter will be remanded to the Commissioner for reasons discussed below, the ALJ is directed to specifically reconsider Lake's IBS diagnosis

beginning at step two. In particular, the ALJ should analyze the evidence of plaintiff's ongoing treatment regimen to determine whether, and to what extent, his particular symptomatology and/or medication regimen (and the possible side effects of that regimen) impairs his ability to complete basic work activities. See, e.g., R. at 451-54 (January 2012 treatment record noting IBS diagnosis and active prescription for loperamide); R. at 465 (March 2013 treatment record noting IBS diagnosis and active prescription for loperamide); R. at 471 (March 2013 treatment record noting "irritable colon").

### 2. Medical Opinions

Lake next argues that the ALJ's failure to discuss or consider a June 17, 2009 consultative psychological examination conducted by Salvatore Argiro, M.D. resulted in the ALJ getting some "very important facts wrong." Pl.'s Mem. at 13 (citing R. at 253-58). The Commissioner, for her part, argues any error was harmless. Def.'s Mem., ECF No. 12, 23.

Where, as here, "mental impairments are at issue, the Commissioner directs administrative adjudicators to employ a 'psychiatric review technique' (sometimes referred to as a 'special technique')." Wilson v. Colvin, 2015 WL 1609727, at *4 (N.D.N.Y. Apr. 10, 2015) (Sharpe, C.J.) (adopting Report & Recommendation of Hines, M.J.) (citing 20 C.F.R. §§ 404.1520a(b)(e), 416.920a(b)-(e)).

"This technical method helps administrative law judges first determine whether claimants have medically-determinable mental impairments." Wilson, 2015 WL 1609727, at *4 (footnote omitted). "This technique also enables administrative law judges to determine subsequently whether medically-determinable mental impairments are severe (a Step 2 issue) and whether they meet or are equivalent in severity to any presumptively disabling mental disorder (a Step 3 issue)." Id.

ALJs determine whether a claimant's severe mental impairments meet or equal any of the presumptively disabling impairments listed in Appendix 1 of the Regulations by applying what are commonly referred to as the "paragraph B criteria." Wilson, 2015 WL 1609727, at *5. "Impairments listed in Appendix 1 of the Regulations are acknowledged by the [Commissioner] to be of sufficient severity to preclude substantial gainful activity." McGregor v. Astrue, 993 F. Supp. 2d 130, 136 (N.D.N.Y. 2012) (McAvoy, S.J.) (alteration in original) (adopting Report & Recommendation of Bianchini, M.J.). "Accordingly, a claimant who meets or equals a Listing is 'conclusively presumed to be disabled and entitled to benefits.'" Id. (quoting Dixon v. Shalala, 54 F.3d 1019, 1022 (2d Cir. 1995)).

These criteria are divided into four functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation.[5] See 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The Regulations require ALJs to rate the first three of these functional areas as "[n]one, mild, moderate, marked, [or] extreme," §§ 404.1520a(c)(4), 416.920a(c)(4), while the fourth category (episodes of decompensation) must be rated on a five-point scale. Id.

In this case, the ALJ's narrative discussion reflects the application of this "special technique." R. at 16-18. In particular, the ALJ found at step two that Lake's "depressive disorder [not otherwise specified]" was severe. Id. at 15. The ALJ then found at step three that plaintiff's restrictions in the four functional areas were not sufficient to meet or equal any of the presumptively disabling mental disorders. Id. at 16-18. As particularly relevant here,

---

[5] "Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." Kohler v. Astrue, 546 F.3d 260, 266 n. 5 (2d Cir. 2008) (citation omitted).

the ALJ also stated that plaintiff's medical record contained "no evidence of any psychiatric hospitalizations." R. at 17.

This is a troubling statement, because it is incorrect. As Lake points out, Dr. Argiro's June 17, 2009 report goes on at length to discuss how plaintiff reported being "psychiatrically hospitalized" beginning in 2002 for a "suicide attempt by cutting his wrist." R. at 254. According to this report, plaintiff "spent several weeks" in that hospital setting before "being transferred to the State Psychiatric Hospital at Binghamton Psychiatric Center for four months." Id.

To be sure, "an ALJ is not required to discuss every piece of evidence submitted." Brault v. Comm'r of Soc. Sec., 683 F.3d 443, 448 (2d Cir. 2012) (quoting Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998)). And of course, this psychiatric hospitalization reportedly occurred in 2002, a number of years before Lake filed this application for benefits in April of 2011 or the ALJ rendered his written decision in May of 2013.[6]

In other words, perhaps the temporal attenuation between Lake's much more recent medical history and his prior, extended period of psychiatric hospitalization is of marginal or possibly no relevance in the disability evaluation here. Cf. Krach v. Comm'r of Soc. Sec., 2014 WL 5290368, at *4 (N.D.N.Y. Oct. 15, 2014) (Suddaby, J.) (adopting Report & Recommendation of Hummel, M.J.) (concluding ALJ's statement that "there was no objective medical evidence" of inpatient psychiatric treatment did not warrant remand despite evidence of multiple psychiatric hospitalizations because the evidence was outside the time period in issue). But that possibility is based on nothing more than speculation, since the ALJ's written

---

[6] Lake's application alleged disability beginning on July 15, 1987. R. at 13.

decision contains no indication that these hospitalizations were discounted because of a prolonged passage of time.

For instance, the ALJ could have made a specific finding about why Lake's prior hospitalization was unimportant now. Cf. Martin v. Colvin, 2016 WL 1383507, at *7 (N.D.N.Y. Apr. 7, 2016) (concluding ALJ was not required to incorporate further discussion of certain evidence outside the relevant time period after specifically analyzing it and determining it was not probative of claimant's conditions during the period in issue). Instead, the ALJ's statement appears to be an error stemming from a misreading, or perhaps a non-reading, of Dr. Argiro's 2009 opinion.

The Commissioner attempts to wave away this deficiency by asserting that any error was harmless, since Dr. Argiro's 2009 report was rendered "almost two years" before the ALJ's non-disability determination in this case and because Dr. Argiro's findings were mirrored by other medical evidence in the record that the ALJ did explicitly consider.

However, the Regulations explicitly require ALJs to "evaluate every medical opinion" in a claimant's medical record. 20 C.F.R. § 416.927(c). And this makes sense, because Lake could theoretically have "satisfied his burden of demonstrating that he was continuously disabled throughout [the relevant period] by means of evidence only from before and after that period." Arnone v. Bowen, 882 F.2d 34, 39 (2d Cir. 1989); see also Norman v. Astrue, 912 F. Supp. 2d 33, 82 n. 74 (S.D.N.Y. 2012) ("[T]he mere absence of contemporaneous medical evidence of a disabling condition during the relevant time period does not necessarily preclude a finding of disability.").

In any event, Dr. Argiro's 2009 report is not the only medical opinion in the record referencing Lake's prior psychiatric hospitalization. Notably, a June 24, 2011 psychiatric

evaluation completed by Sara Long, Ph.D. also reflects that plaintiff was hospitalized for depression in 2002, the same mental impairment the ALJ found to be "severe" at step two. R. at 15, 309.  Therefore, the ALJ's unequivocal statement regarding the complete absence of any psychiatric hospitalizations is belied by at least two different medical opinions in Lake's record.

Further, although the ALJ does take the time to discount Dr. Long's medical opinion, R. at 20, there is no point at which Dr. Argiro's opinion is specifically addressed at any of the later stages in the ALJ's written decision.  Cf. Featherly v. Astrue, 793 F. Supp. 2d 627, 632 (W.D.N.Y. 2011) (remanding where ALJ "failed to adequately discuss the weight assigned to the opinions of all of plaintiff's treating, examining and consulting physicians").

In this case, the ALJ's unequivocal statement—that *no* evidence of *any* psychiatric hospitalizations existed in the record—simply cannot be squared with the administrative record submitted with this appeal, which the ALJ was obligated to carefully review as part of Lake's benefits claim.  Koutrakos v. Astrue, 906 F. Supp. 2d 30, (D. Conn. 2012) (declining to apply harmless error standard where error amounted to a failure to adhere to "the explicit language of the regulations").

There is an important difference between neglecting to consider, or improperly considering, certain medical evidence that is merely duplicative of other evidence that has actually been evaluated and making a factual error about a claimant's medical history on a topic that is arguably central to the disputed claim for benefits.

The former may well be harmless, at least in the sense that the error could not possibly have resulted in a change of outcome.  Cf. Ryan v. Astrue, 650 F. Supp. 2d 207, 217 (N.D.N.Y. 2009) (Kahn, J.) (adopting Report & Recommendation of Bianchini, M.J.)

("[C]ourts have found harmless error where the ALJ failed to afford weight to a treating physician when an analysis of weight by the ALJ would not have affected the outcome.").

The latter casts doubt on whether the ALJ evaluated the entire medical record as part of his overarching duty "to investigate the facts and develop arguments both for and against granting benefits." Sims v. Apfel, 530 U.S. 103, 111 (2000); see also Peed v. Sullivan, 778 F. Supp. 1241, 1246 (E.D.N.Y. 1991) (noting ALJ's "duty to conduct a searching review" of the record). Accordingly, the Commissioner's decision will be vacated and this matter will be remanded.

## IV. **CONCLUSION**

Remand is appropriate where, as here, a reviewing court is "unable to fathom the ALJ's rationale in relation to the evidence in the record" without "further findings or clearer explanation for the decision." Williams v. Callahan, 30 F. Supp. 2d 588, 594 (E.D.N.Y. 1998) (citation omitted). Given that the error here was made at an early stage of the sequential analysis and suggests an incomplete consideration of at least two different sources in Lake's medical record, it also casts doubt on whether, and to what degree, the other steps in the sequential evaluation may have been impacted. Cf. Krach, 2014 WL 5290368, at *8 (concluding ALJ's early-stage error "may have affected the rest of the steps in ALJ's five-step analysis, including the RFC determination"); Saxon v. Astrue, 781 F. Supp. 2d 92, 106 (N.D.N.Y. 2011) (Mordue, C.J.) (declining to address claimant's additional arguments regarding later steps of the sequential analysis where remand based on improper assessment of the medical evidence was already required).

On remand, the ALJ should reconsider any aspects of the record necessary to properly evaluate Lake's benefits claim in the first instance. This includes, but need not be

limited to, conducting an explicit analysis of whether, and to what extent, plaintiff's IBS impacts his ability to complete basic work activities as well as a thorough weighing of all the medical sources in the record, both of which will impact the determination of plaintiff's credibility and the calculation of plaintiff's RFC.

Therefore, it is

ORDERED that

1. Lake's motion for judgment on the pleadings is GRANTED in part;

2. The Commissioner's motion for judgment on the pleadings is DENIED;

3. The Commissioner's decision is VACATED; and

4. This matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion.

The Clerk of the Court is directed to close the case.

IT IS SO ORDERED.

_____
United States District Judge

Dated: May 12, 2016
        Utica, New York.